Case number 11-1297NL, NOVA Southeastern University Petitioner v. National Labor Relations Board. Mr. Walters for the petitioner, Ms. King for the respondent. Thank you. May it please the court. My name is James Walters and I represent the petitioner cross-respondent, NOVA Southeastern University. In brief, NOVA takes issue with the rote application of a National Labor Relations Board rule that took approximately 15 years to formulate, finalize, and eventually get validated by this court. We also take issue with the application of the facts of that particular case to an institution that is completely different. In New York, New York's case, it involved actual trespass enforcement. Can I just ask, it seems to me very clear that since New York, New York was decided after this judgment and you did not seek reconsideration, that any arguments addressed to whether New York, New York applies are beyond our jurisdiction unless they are purely factual arguments. So I think maybe the argument about whether the parking lot is work or not work, but none of the terms of New York, New York are ones that you raise below. So I think we need to start with the question of whether you have any jurisdiction over most of your argument. Your Honor, I think you do. I know that the National Labor Relations Board has raised their predictable, we didn't file a motion for reconsideration, but our principal argument is not New York, New York or its application does. It's the fact that there is an exception that is clearly stated in New York, New York for being able to prove a rationale for an exception to the property right access rule. And we tried to prove the existence of that exception by putting on a witness at the trial back in 2008. The witness's testimony, even though he was director of public safety, was finally objected to by both the union lawyer and by the government lawyer. And as a result, we were not allowed to put on any evidence, which now... That's not accurate. You were not barred from putting on any evidence. You were barred from putting on any evidence after the date of the unfair labor practice, right? I'm talking about the evidence in the unfair labor practice trial, Your Honor. Your Honor, the evidence, maybe I misunderstood. I thought that the evidence that was excluded had to do with public safety events after the date of... The discipline here. The discipline in this case. Is that right? Well, it was, you know, basically the public safety director had just been appointed. He'd been chief of police for this small town before that. He was very familiar with the campus. And basically, he was going to talk about events which happened during that period of time and why... Before the discipline or after? Well, there was frankly no discipline, Your Honor. That's another objection we have. Before the acts that are claimed to be discipline? No, he was not director of public safety before. No, I'm not following the question. I thought that he was permitted to testify about any events, experiences, reasons up to the date of the hand-billing in this case. But what was excluded was testimony about crimes, etc., after the hand-billing in this case. Am I right about that?  So, if I were of the view that it is not relevant to the establishment of the original policy and to its application, that crimes occurred after the establishment of the original policy and its application, then those would be excluded. And the only evidence you would have is the evidence you were permitted to put on, correct? That's what the judge ruled at the time, Your Honor. Yes. So, of that evidence, where is the evidence that you needed a rule preventing hand-billing in a parking lot in order to protect against crime on the campus? Well, the rule stated then, and I believe it's still in the handbook, simply says, before you solicit, you must obtain advance permission. And there is evidence in the record that no one's ever been denied permission except... I'm only on the public safety question, okay? So, are there examples where people came on to solicit and committed crimes? There are none in the record, no, Your Honor. Okay. So, what is the evidence that soliciting, that a rule against soliciting is needed, was needed at the time for the public safety rationale? What was the reason? What's the evidence? Well, what would have the evidence been? No, what was the evidence? Because as you told me, he was allowed to put on any evidence he had up until the time of the actual hand-billing in this case. I don't know that he put on any evidence as to what happened in 2006 when the charge was filed. He was not there then. He had only been director of public safety and an employee of the university for four months when the trial happened, and that was in the fall of 2008. No, but he would have access to the university's records. He would have access to the university's records of any criminal activity. Yes, because he had been a former police officer in the Davie Police Department, which is adjacent to the campus. So, he could have testified about it, and the only point was that what happened after, and I'll probably get the name wrong, Mr. McGonigal was told to stop, and then he was disciplined, and the ALJ said... Oh, Mr. McGonigal? Yes. The ALJ said evidence about what may have happened after that is not relevant, and so the board says you haven't shown, in any event, even if that was an abuse of discretion or error, that you were prejudiced. What the board said, kind of catalogically, was that since we couldn't show that any contractors' employees had engaged in acts of violence, and that really misses the point, contractors' employees are subject to the same safety rules that every invitee at the campus, and it is an open campus, which makes it unusual, you can enter the campus through any one of the 360 degrees. There are some streets for vehicles, but people ride Vespas in, people walk in with their backpacks, it's just a completely open campus, and our security department, then and now, treats vigilance as a commodity that they have. What is the vigilance relating to hand-billing? This is a question I don't... it doesn't seem like... regardless of what lack of evidence there was in the other way, what evidence did you put on, this is your responsibility to put on evidence, for an exception, what is the evidence that you needed a hand-billing rule aimed at employees and contractors in order to protect the campus? What was the evidence that we needed? What evidence did you put on? The evidence, generally, your honor, from the director of public safety was that he and his forces need to be constantly vigilant as to what everybody was doing, and if anything was doing something suspicious, that's where the eyesight goes to. And if we know that you're handling out, you know, union solicitations to organize the employees of a contractor, the vice president said, if I would have known that, I would have approved it. He wouldn't have approved it, he would have approved it on the swale, isn't that what he said? Yes, I believe that. He wouldn't have approved it in the parking lot, he would have approved it on the swale outside the campus, right? Well, yes, but he didn't even know the content, and the whole purpose of the rule is advise us what the content is, and there's some testimonies. And if you advise us as the content, we're going to exclude you from the campus, we're going to put you on the swale, right? Yes, but the rule is not an exclusion rule like New York, New York is. In New York, New York, they were saying, basically, if you come on our property at this particular time, even when you're off-duty, we're going to have the Las Vegas Police Department arrest you. There was never a threat like that. This was, I think, a permit rule, the same as with cars. If you're going to solicit, just tell us what you're soliciting for. And frankly, I think one of the big reasons is like most major universities, they have a pouring agreement, which is an arrangement with one of the two larger software companies to exclusively use their product. So if I am a pizza retailer and I want to hand out leaflets at the campus that provides a slice of pizza and a sip of X brand of cola like that, and it's the wrong brand, it doesn't get distributed. So the real reason had nothing to do with safety, it was really the Saturday Night Live gag, no Coke, Pepsi. Is that right? Well, that's the reason, I think, that was given in the record below, yes. So that's not a safety explanation at all. We get paid more by Pepsi than we get paid by Coke. I'm not saying that's a bad rationale, but that is not the rationale of New York. To somebody from Atlanta, it is a bad rationale. I got it, I got it. But that's the rationale, show us the content and we'll let you solicit, we'll let you distribute. And I think the board said just because none of your contractors have ever engaged in violence. And I should point out that as of the point of the unfair labor practice charges being filed, there were not the series of campus shootings and massacres that have occurred just frequently since then. And I think back then, public safety people were being, particularly because of the vulnerability of their campus, they were being extremely… When we talk about safety on campuses, the question is whether it has anything to do with this rule. That's really the question. The rule is a rule about hand billing by employees and their contractors. It's not a rule about anything else. That's what the question is, and what is the justification for that? Well, Your Honor, if I could put the rule in context. The rule, most rules that the NLRB attempts to or successfully does invalidate are handbook rules that apply to employees and that are directed to employees. This particular rule is from the campus safety book, which applies to, in theory, everybody who enters the campus, which could be anybody. We've always treated people on our campus as invitees. We don't care what kind they are. If they're faculty, they'll have a faculty ID card. If they're students, they'll have a student ID card. If there's someone just wanting to walk in and see how pleasant it is, they won't have an ID card at all. But this applies for the safety of people coming onto campus. And one of the minor rules in it, in the safety rule, is before you solicit, tell us what the content is. And that's a very innocuous, benign rule. And that's the only thing the board and the SEIU could come up with to show that there'd been anything remotely looking like a violation. And all we tried to do is show, through testimony, which was denied by the judge, that it's a benign rule and it has a purpose. And I think the exclusion, Your Honor, of testimony from the public safety director just because he'd only been there for a while... It's not because he had been there. It's because his testimony was about things that happened after the event in question. Well, I mean, it's kind of tough to follow. But I actually read through the transcript. And basically, he was put on, and John George was his name. And he said the solicitation permission rule was grounded in safety and security of students and employees. He said there was a public safety component to it, which he never really got to explain. And at that point, he used the T word, terrorism. And that's at appendix page 248. And Ms. Kachura, who was the NLRB's lawyer, objected because he'd only been there four months. And then Ms. Locke, the Service Employees Union lawyer, objected because, and I quote, public safety or resident or student safety isn't a defense under the law, which to me is just a silly statement. But that's how this case ended up. And frankly, what we've got is a safety rule embedded in a whole lot of other safety rules applicable to a student body, its faculty, its visitors, its contractors. And at that point, we end up with a board order. And this is the part that's painful. The board order, anymore, what board orders do is they invalidate in order for you to rescind a rule. I understand your point. You say this is a benign rule, but it depends how it's enforced, whether it's benign or not. And in the labor context under the statute, you have to meet the objections that you may be interfering with Section 7 rights. So you have to show that you have this public safety concern. I think that's what at least I'm focusing on. I understood, Your Honor. I understood. And littering, you know, is not what's involved. Littering is not an issue. Well, it was below. I mean, it's encompassed in probably one of the purposes of many of the rules, littering, yes. But as the judge pointed out, the people in the contractor unit are responsible for picking up the litter, and surely they wouldn't litter in their own jobs. I'm not sure I understand that or not. Thank you. We'll hear from the NLRB. Good morning. Amy Ginn for the NLRB. I do want to start by saying that in terms of the Board's application of New York, New York here, we feel that NOVA did have an obligation to file a motion for reconsideration with the Board if they felt that the Board should not have applied that rule here. In terms of certain factual matters that go to the rule, I mean, I'm happy to speak about those if the Court is interested, but the Board made findings based on substantial evidence that the situation here with McGonigal hand-billing in the parking lot, off-duty, was similar to the hand-billing issue in New York, New York, similar enough that it fell under the same rule for contractor employees, that he was privileged to engage in that Section 7 activity. As to the evidence having to do with safety that would allow NOVA to enforce that rule against McGonigal, there is no evidence in the record, and there was no proffered evidence, that contractor employees who are there to perform work on the property would somehow be creating an additional danger by handing out flyers while they were there already off-duty. No contention that McGonigal wasn't allowed to be there off-duty. He was already there off-duty. He testified. He arrived at work over an hour early every morning to see his coworkers and do what, I don't know, have coffee or something. And he, there's no showing that a contractor employee who has a relationship to the property, and that's what's important here and that's what was important in New York, New York, would somehow then present an additional danger because they were engaging in Section 7 activity. With respect to the handbook rule itself, the Board found that the rule was overbroad on its, was unlawful on its face because it was overbroad, that maintaining the rule itself was a violation of Section 8A1 of the Act. And in our brief, we've asked for some reinforcement of that finding because it was not challenged in NOVA's opening brief. All right, why don't we pause and ask members of the Court whether there are questions. Sure. I thought your brief was as to its own employees. As to its own employees, that's correct. All right. If there aren't any further questions, then maybe the better part of valor here is to sit down. I will reserve your time for other activities. Thank you very much. Can I just ask you a question, though? Sure. I want to be clear. As I read the same transcript that we're talking about here, Mr. George did get to put on evidence about the university's concerns about security. And the only thing he was limited from testifying about is what happened after. The proffer, Your Honor, was, quote, events that have to do with safety. Yes. And these events were events that occurred within four months of the November 2008 hearing, whereas the incident here occurred in August of 2006. But he had already testified, is what I'm getting at, about concerns, safety and security concerns. That's right. Because your brief is arguing, as I read it, that any error would be harmless because they haven't shown prejudice. Yes, we are saying that NOVA has not shown prejudice as to if they were able to show that the judge abused his discretion, excluding the evidence. We're saying that they have shown no prejudice because the evidence as to things that happened two years subsequent would not be relevant to their enforcement of the rule against McGonigal. Well, if it's not relevant, then it's not an error to begin with. Isn't that right? That's right. Right. I know. But they are arguing it was an error. So let me ask one other question. Sure. Because NOVA's brief is that there simply isn't evidence that Totaro himself imposed the discipline on McGonigal, that there were two other people there who imposed the discipline. There were two other people there whose signatures are on the discipline form. Yeah. But the board found that Totaro disciplined McGonigal because McGonigal was told Totaro wanted to see him. They went to Totaro's office, where Totaro explained what the write-up was for and said McGonigal couldn't distribute anything on NOVA's property because it's private property. So Totaro set the substantive charge, as it were. That's right. And the other two were doing ministerial acts in terms of signing the document? Well, Totaro is the one who explained to McGonigal what the discipline was for and explained the policy to McGonigal. So those would be the facts that the board relied on to say that Totaro is the one who disciplined McGonigal. Also important to this is that Totaro denied the situation, saying he didn't remember this meeting, but the judge specifically said that that was false, that Totaro saying he didn't recollect was false, and specifically credited McGonigal that Totaro is the one who told him these things in the meeting as to what he was being disciplined for and what the policy was and why. All right. Thank you. Thank you very much. Does the petitioner have any time? Well, let's double that. You can have a minute. Excuse me. I'd just like to respond to two points. I'm always in trouble looking at the record about the agency issue ascribed to Mr. Totaro, who at the time of this alleged unfair labor practice was an employee of Unico. Well, the record, though, and the board is arguing that on the 17th the contract ended with Unico and all of its employees were laid off, and that Mr. Totaro was hired by NOVA, and he was hired the next day by NOVA. That's true, Your Honor. That is true. Yeah, that is true. And at the time of the trial he was an employee of NOVA. No, no, no. The key is that the next day, the 18th, he was an employee of NOVA, and that's when this discipline occurred. I'm not sure I remember it that way. Well, that's in the red brief, and if you think that's inaccurate, tell me why. My understanding is that he was tagged for agency status for discipline from Unico that occurred shortly after the 2006 handling incident. And my theory has always been that the board had to do that to show some enforcement of an otherwise benign rule because the person who initially said something to McGonigal about passing out leaflets was admittedly a public safety officer, which is the equivalent in the industrial section as a guard. And guards are one of those classes of people that cannot invoke management's wrath and commit an unfair labor practice against a fellow worker. 93 of the Act defines a guard as someone who enforces against employees under the person's rules to protect property of the employer or to protect the safety of persons on the employer's premises. So Healy was not a suitable agent, so they had to find someone else and construct this agency theory to put some teeth into what we considered to be a benign rule. Your Honor, I might make one final comment since I think I did reserve a couple of minutes. On the standard, I mean, we are raising New York, New York, even though we think architecturally and geographically and every other way it doesn't really apply and shouldn't apply to us. Property rights have never been at our forefront because of the open campus. But the board did cite New York, New York when it ruled against us, and we think we're entitled to say basically one suit does not fit all, and it certainly doesn't fit our particular campus. Right, but I thought the Chief Judge went through this initially. You didn't file a motion for reconsideration, and your response was it doesn't matter because our theory at trial was the following. So I thought you acknowledged it. Well, you know, I think so. I would just like to leave on citing Judge Henderson, who was part of the opinion in New York, New York, along with Your Honor. And she filed a concurring opinion, which I think is kind of poignant at the time. She says, and I quote, in my view, we're in no way retreating from the requirement that in reaching a proper accommodation between Section 7 and private rights, the board is obliged to engage in considered analysis and explain its chosen interpretation. She finishes that up by saying that recognizing the fact-specific nature of its inquiry, the board in New York, New York, left open the possibility that in some instances, property owners will be able to demonstrate, which our contention is we weren't able to do, that they have a legitimate interest in imposing reasonable, non-discriminatory, narrowly tailored restriction on access. And so the question is, what evidence would you have put in that would have been relevant to the period at issue that you did not get to put in? Not all these crimes after the fact, but the crimes before the fact. I can give you a general nature of the evidence. Has a proffer been made somewhere? A proffer was not made. A proffer was not made. This was a brand-new person in the position. A proffer was not made. But the judge, based on two objections from the other lawyers, basically said he wasn't going to allow anything to do with terrorism into the record. And I don't know, I mean, that's a principle objection. Well, but that wasn't your objection in the brief. The brief, I mean, this coming out is a little bit of an additional surprise to me. Your brief on page 47, 71 says, the ALJ barred George from testifying as to those events on the grounds that they occurred after the October 22nd McGonigal incident, which according to the ALJ meant they were not relevant to this case. Your argument in the brief is that events after August 22nd are relevant. I didn't see an argument that the judge did anything else to bar evidence here. And your brief doesn't say anything to suggest that the witness was restricted in any way other than that he couldn't testify to events after the McGonigal incident.  That's true, Your Honor. But that includes a lot of areas, too. No, but my question was, what evidence did he not have the opportunity to present regarding security concerns on or before August 22nd? I can only surmise based on what— Well, that's not any good. That's what I'm getting at. Either he had evidence that he didn't get a chance to present or not. I think it's clear that it would have related to a university's security policies in their totality dealing with a large, target-rich student population in an open area. I'm fairly sure that would have been the case. But that was presented. He testified to that, and that was evidence. That was before the ALJ. What I'm trying to find out is how you were prejudiced by that ruling. What evidence would you have presented? I wasn't there in the trial, Your Honor. I can only guess, but I do— No, I don't want to guess. Because the problem has gotten worse, as we know. Further questions? Thank you. We'll take the matter under submission. Thank you.
judges: Garland, Rogers, Ginsburg